UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

Government Employees Insurance Co., GEICO
Indemnity Co., GEICO General Insurance
Company, and GEICO Casualty Co.,

                 Plaintiffs,                      **MEMORANDUM & ORDER**
                                                   19-CV-06118 (DG) (PK)

     -against-

Diana Beynin, D.C., Spine Care of NJ PC,
Peter Albis, D.C., Advanced Spinal Care
Rehabilitation PA, Axis Chiropractic Care, P.C.,
Bruce Jacobson, D.C., and Joseph Detullio, D.C.,

                 Defendants.
----------------------------------------------------------X

DIANE GUJARATI, United States District Judge:

On October 30, 2019, Plaintiffs Government Employees Insurance Co., GEICO

Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co. (together,

"GEICO" or "Plaintiffs") filed the Complaint in this action against Defendants Diana Beynin,

D.C., Spine Care of NJ PC, Peter Albis, D.C., Advanced Spinal Care Rehabilitation PA, Axis

Chiropractic Care, P.C., Bruce Jacobson, D.C., and Joseph Detullio, D.C. (together,

"Defendants").  Complaint, ECF No. 1.  On May 6, 2020, Plaintiffs filed a substantively

identical Amended Complaint.  Amended Complaint ("FAC"), ECF. No. 33.  Therein, Plaintiffs

allege that Defendants – three chiropractic professional corporations and four chiropractors –

submitted thousands of fraudulent and non-reimbursable insurance claims to Plaintiffs over

several years.  Plaintiffs assert fifteen causes of action, including for declaratory judgment,

common law fraud, aiding and abetting fraud, unjust enrichment, violations of the Racketeer

Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, and a violation of the New Jersey

Insurance Fraud Prevention Act, N.J. Stat. Ann. § 17:33A-1.  Defendants answered Plaintiffs'

Amended Complaint on May 20, 2020, ECF No. 35, and discovery is ongoing.

On March 2, 2020, Plaintiffs brought the instant Motion to Stay and Enjoin Defendants'

Collection Proceedings, ECF No. 27, pursuant to Rule 65 of the Federal Rules of Civil Procedure

("Rule 65") and the Court's inherent power.  *See* Plaintiffs' Memorandum of Law in Support of

Motion ("Pls.' Mem."), ECF No. 27-1.  Plaintiffs seek to stay hundreds of no-fault insurance

proceedings pending between the parties, to enjoin Defendants from filing additional claims until

this action is resolved, and to enjoin the American Arbitration Association ("AAA") and any

other arbitral forum from accepting the filing of any arbitration demand by Defendants seeking

payment from GEICO or issuing any award arising out of arbitration involving Defendants and

GEICO.  *See* ECF No. 27.  For the reasons set forth below, Plaintiffs' Motion to Stay and Enjoin

Defendants' Collection Proceedings is granted in part and denied in part.

## BACKGROUND

### I.    New York Insurance Law

In 1973, New York enacted a no-fault insurance law entitled the Comprehensive Motor

Vehicle Insurance Reparations Act.  *See* N.Y. Ins. L. §§ 5101-5109; *see also Walton v.*

*Lumbermens Mut. Cas. Co.*, 88 N.Y.2d 211, 214 (1996).  Its purposes "were to remove the vast

majority of claims arising from vehicular accidents from the sphere of common-law tort

litigation, and to establish a quick, sure and efficient system for obtaining compensation for

economic loss suffered as a result of such accidents."  *Walton*, 88 N.Y.2d at 214 (citations

omitted).  The law was also designed "to reduce the burden on the courts and to provide

substantial premium savings to New York motorists."  *Fair Price Med. Supply Corp. v.*

*Travelers Indem. Co.*, 10 N.Y.3d 556, 562 (2008) (quoting *Hospital for Joint Diseases v.*

2

*Travelers Prop. Cas. Ins. Co.*, 9 N.Y.3d 312, 317 (2007)).  "In furtherance of these goals, the

Superintendent of Insurance has adopted regulations implementing the No-Fault Law."  *Id.*

(quoting *Hospital for Joint Diseases*, 9 N.Y.3d at 317).

Under the no-fault scheme, "automobile insurers are required to provide Personal Injury

Protection Benefits . . . up to $50,000.00 per insured for necessary expenses incurred for

healthcare goods and services, including physician services, chiropractic services, physical

therapy services, and acupuncture services."  *Gov't Emps. Ins. Co. v. Mayzenberg*, No. 17-CV-

2802, 2018 WL 6031156, at *1 (E.D.N.Y. Nov. 16, 2018).  Benefits may be "assign[ed]" by

insureds to "providers of health care services."  N.Y. Comp. Codes R. & Regs. tit. 11,

§ 65-3.11(a).

Proof of the other driver's fault is not required, and "[i]nsurers are required to verify a

claim, and then pay or deny the claim within 30 days."  *Gov't Emps. Ins. Co. v. Advanced

Comprehensive Lab'y, LLC*, No. 20-CV-2391, 2020 WL 7042648, at *1 (E.D.N.Y. Dec. 1, 2020)

(citing N.Y. Ins. L §§ 5102(a)(1), (b), 5106(a) and N.Y. Comp. Codes R. & Regs. tit. 11,

§ 65-3.8(a), (c)), *appeal docketed*, No. 20-4258 (2d Cir. Dec. 30, 2020).  "If an insurer fails to

comply with this timeframe, it will be precluded from asserting many (but not all) defenses to

coverage, including most fraud-based defenses," *id.* (citing *Fair Price Med. Supply Corp.*, 10

N.Y.3d at 563-64), unless it can show that the "narrow" exception of lack of coverage applies,

*Fair Price Med. Supply Corp.*, 10 N.Y.3d at 563 (quoting *Hospital for Joint Diseases*, 9 N.Y.3d

at 317-18).

However, "[a] provider of health care services is not eligible for reimbursement under

section 5102(a)(1)" if it "fails to meet any applicable New York State or local licensing

requirement necessary to perform such service in New York or meet any applicable licensing

requirement necessary to perform such service in any other state in which such service is performed." N.Y. Comp. Codes R. & Regs. tit. 11, § 65-3.16.[1]

Pursuant to N.Y. Comp. Codes R. & Regs. tit. 11, §§ 65-1.1(a), (d) "[i]n the event any person making a claim for first-party benefits and the [insurance] [c]ompany do not agree regarding any matter relating to the claim, such person shall have the option of submitting such disagreement to arbitration." *See also* N.Y. Ins. L. § 5106(b). The arbitral fora are subject to "simplified . . . procedures," *id.*, and, "[b]y statute, the New York Department of Financial Services Superintendent has designated AAA as the body responsible for administration of the No-Fault arbitration process." *Gov't Emps. Ins. Co. v. Wellmart RX, Inc.*, 435 F. Supp. 3d 443, 446 (E.D.N.Y. 2020) (citing N.Y. Comp. Codes R. & Regs. tit. 11, § 65-4.2(a)(2)).

## II.   Factual Background

GEICO alleges that Defendants submitted thousands of fraudulent, non-reimbursable insurance claims from at least 2012 through the filing of GEICO's Complaint and beyond. *See, e.g.*, FAC ¶¶ 1-2, 6-7, 82, 322; ECF No. 33-2 (Ex. 1); ECF No. 33-3 (Ex. 2); ECF No. 33-4 (Ex. 3); ECF No. 27-2 ("Weir Decl.") ¶ 19 (noting that 27 arbitrations were initiated after the original Complaint was filed). According to GEICO, Defendants' claims are fraudulent and non-reimbursable for several independent reasons. Namely, the chiropractic services allegedly provided to New York automobile accident victims – *e.g.*, initial examinations, chiropractic

---

[1] New Jersey has also enacted a comprehensive no-fault regime through the New Jersey Automobile Reparation Reform Act. *See* N.J. Stat. Ann. §§ 39:6A-1-35. Under New Jersey's statutory scheme, claims may also be assigned to healthcare service providers, *see id.* § 39:6A-4, and failure to "comply with [all] . . . significant qualifying requirements of law that bear upon rendition of the service" will render healthcare service providers ineligible for personal injury protection benefits. *Allstate Ins. Co. v. Northfield Med. Ctr., P.C.*, 228 N.J. 596, 622 (2017) (quoting *Allstate Ins. Co. v. Orthopedic Evaluations, Inc.*, 300 N.J. Super. 510, 516 (App. Div. 1997)).

manipulation under anesthesia, and diagnostic testing – "were not medically necessary;" "were provided . . . pursuant to predetermined fraudulent protocols;" were, in some cases, not provided at all; were billed under improper billing codes; "were provided . . . pursuant to illegal kickback and self-referral arrangements;" were provided by entities without proper licensure; were provided by entities that failed to comply with all pertinent laws and regulations governing healthcare practice in New Jersey; and were, in certain cases, "provided by independent contractors."  FAC ¶¶ 1-2; *see also, e.g.*, Pls.' Mem. at 3-5.

In support of these assertions, GEICO, in the Amended Complaint, details the steps involved in alleged improper fee-sharing by Defendants, FAC ¶¶ 83-89; deficiencies undergirding Defendants' upcoding practices, *id.* ¶¶ 104-33, 276-83, 292-308; and patient-, location-, and date-specific "representative" examples of fraudulent or non-reimbursable conduct, *id.* ¶¶ 143-45, 155-58, 168-70, 175, 183, 195-97.  The Amended Complaint also includes detailed allegations that Albis and Axis Chiropractic Care, P.C.'s V-NCT test reports were identical, *id.* ¶¶ 234, 246-51; that Albis and Axis Chiropractic Care, P.C. provided false diagnoses, *id.* ¶¶ 255-57; that Albis and Axis Chiropractic Care, P.C.'s range of motion tests were unnecessary and duplicative, *id.* ¶¶ 268-75; and that Albis and Axis Chiropractic Care, P.C. did not meaningfully interpret these tests and fraudulently unbundled them, *id.* ¶¶ 282-84.  In addition, the Amended Complaint contains detailed allegations regarding shortcomings in other tests, *id.* ¶¶ 291-308; and allegations indicating that the entity Defendants employed independent contractors, *see, e.g.*, *id.* ¶¶ 312-13, 317-19.  GEICO attaches as exhibits to the Amended Complaint three charts setting forth thousands of allegedly fraudulent claims GEICO has identified thus far.  Exs. 1-3.

GEICO alleges that "Defendants systemically concealed their fraud and went to great lengths to accomplish this concealment."  FAC ¶ 325.  Indeed, Plaintiffs allege that "[e]ach step in the Defendants' fraudulent treatment protocol was designed to falsely reinforce the rationale for the previous step and provide a false justification for the subsequent step, and thereby permit the Defendants to generate and falsely justify the maximum amount of fraudulent no-fault billing for each Insured."  *Id.* ¶ 93.  GEICO further alleges that "Defendants systematically failed and/or refused to respond to repeated requests for verification of the charges" that GEICO sent to Defendants once it began to suspect that Defendants were engaged in fraudulent conduct.  *Id.* ¶ 331.  GEICO asserts that, as a result, it "did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it filed [the] Complaint."  *Id.* ¶ 336.

GEICO seeks, *inter alia*, to recover more than $234,000 in previously paid insurance claims and to obtain a declaration that it is not obligated to pay over $6,670,000 in pending no-fault insurance claims.  *See, e.g.*, *id.* ¶¶ 1-2; *see also* Weir Decl. ¶ 18 (noting 591 pending arbitrations in which Plaintiffs seek to recover more than $2,500,000).  GEICO also brings causes of action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, and the New Jersey Insurance Fraud Prevention Act, N.J. Stat. Ann. § 17:33A-1, and asserts claims for common law fraud, aiding and abetting fraud, and unjust enrichment.  *See* FAC ¶¶ 337-440.

Through the instant Motion, Plaintiffs seek an order pursuant to Rule 65 and the Court's inherent authority "staying all pending no-fault insurance collection arbitrations that have been commenced against GEICO by or on behalf of Defendants;" "enjoining all the Defendants . . . and anyone acting or purporting to act on their behalf, from commencing any further no-fault

insurance collection arbitrations;" and "enjoining the American Arbitration Association . . . and any other arbitral forum from accepting the filing of any arbitration demand by or on behalf of the Defendants seeking payment from GEICO, or issuing any awards involving arbitration between the Defendants and GEICO, pending [resolution of this matter]."  Pls.' Mem. at 1.

## III.    Procedural Background

On October 30, 2019, Plaintiffs filed their Complaint.  ECF No. 1.  On January 1, 2020, Defendants answered.  ECF No. 24.  On March 2, 2020, Plaintiffs filed the instant Motion to Stay and Enjoin Defendants' Collection Proceedings.  ECF No. 27.

On May 6, 2020, Plaintiffs filed the Amended Complaint, in which they corrected their previous misidentification of Axis Chiropractic Care, P.C. as Axis Chiropractic, P.C., but that was otherwise substantively identical to the original Complaint.  ECF No. 33.  On May 20, 2020, Defendants answered the Amended Complaint.  ECF No. 35.

On May 20, 2020, Defendants also filed their opposition to Plaintiffs' Motion to Stay and Enjoin Defendants' Collection Proceedings.  ECF Nos. 36-40.  On May 27, 2020, Plaintiffs filed their Reply Memorandum of Law.  ECF No. 41.  On July 14, 2020, Plaintiffs filed a Notice of Supplemental Authority regarding Plaintiffs' Motion to Stay and Enjoin Defendants' Collection Proceedings.  ECF No. 43.  On July 20, 2020, Defendants responded to Plaintiffs' Notice of Supplemental Authority by filing their own Notice of Supplemental Authority.  ECF No. 45.  On the same day, Plaintiffs filed a letter asking the Court to disregard Defendants' Notice of Supplemental Authority.  ECF No. 46.  On July 21, 2020, the Court granted Plaintiffs the opportunity to respond to Defendants' Notice of Supplemental Authority.  On July 24, 2020, Plaintiffs filed their response to Defendants' Notice of Supplemental Authority.  ECF No. 48.

The parties filed a joint status letter on February 8, 2021, at the direction of the Court, in which Plaintiffs indicated their intention to continue to pursue the instant Motion.  ECF No. 55. On March 5, 2021, Plaintiffs filed an additional Notice of Supplemental Authority.  ECF No. 57.

## DISCUSSION

### I.   Applicable Law

Preliminary injunctions are governed by Rule 65.  For a preliminary injunction to issue, "[the] party seeking [injunctive] relief . . . must 'show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'"  *Trump v. Vance*, 941 F.3d 631, 639 (2d Cir. 2019) (quoting *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)), *aff'd*, 140 S. Ct. 2412 (2020).  "Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (citation omitted).

The preliminary injunction standard applies where, as here, a party seeks to stay pending no-fault insurance claims and to enjoin the filing of further claims during the pendency of a lawsuit seeking to invalidate those claims.  *See, e.g.*, *Wellmart RX, Inc.*, 435 F. Supp. 3d at 449; *Gov't Emps. Ins. Co. v. Moshe*, No. 20-CV-1098, 2020 WL 3503176, at *1 (E.D.N.Y. June 29, 2020); *Gov't Emps. Ins. Co. v. Cean*, No. 19-CV-2363, 2019 WL 6253804, at *4 (E.D.N.Y. Nov. 22, 2019); *State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 233 (E.D.N.Y. 2018); *Mayzenberg*, 2018 WL 6031156, at *5.[2]

---

[2]  Contrary to Defendants' assertion, *see* ECF No. 40 at 4-5 ("Defs.' Mem."), the preliminary injunction standard set forth herein applies because the Court is being asked to ensure

II.    **Preliminary Injunctive Relief is Warranted**

A.    **Plaintiffs Have Demonstrated Irreparable Harm**

"To establish irreparable harm, a party seeking preliminary injunctive relief must show that 'there is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" *Wellmart RX, Inc.*, 435 F. Supp. 3d at 449 (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)).  The "irreparable harm must be shown to be actual and imminent, not remote or speculative." *Kamerling*, 295 F.3d at 214.

Plaintiffs claim that "the likely inconsistencies amongst the prospective arbitral rulings themselves, and between the prospective arbitral rulings and this Court's ultimate disposition of the declaratory judgment and fraud-based claims, threaten GEICO with irreparable harm."  Pls.' Mem. at 13.  In support of that assertion, Plaintiffs proffer, *inter alia*, that the Defendants are "actively prosecuting at least 591 separate arbitrations . . . – the same pending billing that is the subject of GEICO's declaratory judgment claim in this federal action."  Weir Decl. ¶ 18. Plaintiffs further note that Defendants have filed "at least 27 . . . arbitrations in the three months since GEICO commenced this action."  *Id*. ¶ 19.

Although Defendants Benin and Albis assert – curiously – that there will "be [no] future claims . . . involv[ing] 'manipulation under anesthesia,'" ECF No. 38 ("Albis Decl.") ¶ 4; ECF No. 39 ("Beynin Decl.") ¶ 4, and Albis asserts that there will "be [no] future claims involv[ing] . . . V-NCT," Albis Decl. ¶ 4, Defendants do not dispute that hundreds of no-fault arbitrations are currently pending, *see, e.g.*, Albis Decl. ¶¶ 3-4 ("[A]pproximately 400 No Fault arbitrations . . .

---

preservation of the status quo until the case is resolved on the merits.  *See, e.g.*, *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 36-37 (2d Cir. 2018).

were filed prior to the filing of the Complaint [and] . . . [a]bout 35 . . . were filed after this action was commenced."); Beynin Decl. ¶ 3 ("[A]pproximately 175 No Fault arbitrations . . . were filed prior to the filing of the Complaint [and] . . . [a]bout 15 . . . claims were filed after this action was commenced.").  Further, Defendants contend that they may prevail on a number of their claims.  *See* Defs.' Mem. at 6-7 ("[D]efendants have been successful in winning the No Fault arbitration on a vast supermajority of" claims in which "Plaintiffs have previously contested medical necessity."); *see also, e.g.*, Albis Decl. ¶ 13; Beynin Decl. ¶ 13.  Defendants claim, however, that Plaintiffs' harm is compensable through monetary damages.  *See* Defs.' Mem. at 13-14.

Defendants argue that the United States Court of Appeals for the Second Circuit, in *Allstate Insurance Company v. Harvey Family Chiropractic*, 677 F. App'x 716 (2d Cir. 2017), "affirmed the . . . denial of a preliminary injunction to enjoin No Fault Arbitrations" in "a case almost identical to the present case" on the grounds that "plaintiff could be made whole by money damages."  Defs.' Mem. at 14.  *Harvey* is, however, of limited applicability here.  As a preliminary matter, "[*Harvey*] does not set out the factual background of the case in enough detail to disclose whether its facts are sufficiently similar to those of a subsequent unrelated case to make [the] summary ruling applicable to the new case."  *Wellmart RX, Inc.*, 435 F. Supp. 3d at 451 (quotation marks omitted) (citation omitted).  Moreover, "the Second Circuit [in *Harvey*] said nothing of the risk of inconsistent judgments."  *Id.*; *see also Moshe*, 2020 WL 3503176, at *2 (concluding that "*Harvey* does not preclude granting an injunction to avoid inconsistent judgments").

Plaintiffs do not claim that "'mere injuries . . . in terms of money, time and energy necessarily expended' absent a stay of ongoing state court and arbitration proceedings 'are . . .

enough' to establish irreparable harm." *Harvey Fam. Chiropractic*, 677 F. App'x at 718

(quoting *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995)).  Rather, Plaintiffs assert that "the

likely inconsistencies amongst the prospective arbitral rulings themselves, and between the

prospective arbitral rulings and this Court's ultimate disposition of the declaratory judgment and

fraud-based claims, threaten GEICO with irreparable harm."  Pls.' Mem. at 13.  As "reiterated

time and again in this Circuit," these harms are irreparable.  *Wellmart RX, Inc.*, 435 F. Supp. 3d

at 449-450 (collecting cases); *see also, e.g.*, *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199,

222 (E.D.N.Y. 2013) ("[A]llowing a large number of proceedings to be heard by a mix of

arbitrators, each of whom will likely come to their own independent and potentially

contradictory conclusions, will result in harm to [plaintiff-insurer] from which it cannot

recover."); *Advanced Comprehensive Lab'y, LLC*, 2020 WL 7042648, at \*4 ("Irreparable harm

occurs where 'an insurer is required to waste time defending numerous no-fault actions when

those same proceedings could be resolved globally in a single, pending declaratory judgment

action.'" (quoting *Moshe*, 2020 WL 3503176, at \*1)).

Defendants' supplemental authority, *Allstate Insurance Company v. Avetisyan*, No. 17-

CV-4275, 2018 WL 6344249 (E.D.N.Y. Oct. 30, 2018), does not alter the Court's analysis.

Setting aside that Defendants do not identify which part of the opinion they find instructive,

*Avetisyan* is distinguishable.  In *Avetisyan*, the plaintiffs asserted fraud in the federal court action

but declined to do so in the no-fault proceedings.  *Id.* at \*4.  In light of that difference, the

*Avetisyan* court found that the plaintiffs failed to make a clear showing of irreparable harm

because, in substance, there was "simply no danger of inconsistent determinations," and "[a]ny

harm to Plaintiffs resulting from adverse awards in the Parallel Proceedings" could "be

adequately remedied by future monetary damages . . . ."  *Id.*  Conversely, Plaintiffs here are

alleging, *inter alia*, that Defendants billed for medically unnecessary treatments.  *See, e.g.*, FAC ¶¶ 1-2.  Because any finding by an arbitrator that Defendants' claims are valid "necessarily entail[s] a finding that the underlying [treatment] was medically necessary," any determination by this Court that Plaintiffs' claims are meritorious would give rise to inconsistent judgments. *Wellmart RX, Inc.*, 435 F. Supp. 3d at 451 (E.D.N.Y. 2020) (citing N.Y. Ins. L. § 5102(a)(1), (b)); *see also* ECF No. 48 ("[I]n the present federal action, GEICO seeks a declaratory judgment to the effect that the Defendants may not collect *on the very same claims* that currently are pending in arbitration." (emphasis in original) (citing Weir Decl. ¶¶ 18-19)).  There is, therefore, the "identity of issues" between the action before this Court and the arbitral proceedings that was lacking in *Avetisyan*.  2018 WL 6344249, at *4.

Plaintiffs also claim that they cannot meaningfully prosecute the claims they are asserting here in New York no-fault arbitration proceedings.  *See, e.g.*, Pls.' Mem. at 12-13; Weir Decl. ¶ 17; ECF No. 41 ("Pls.' Reply Mem.") at 6-7.  Although Defendants disagree, *see, e.g.*, Defs.' Mem. at 15; ECF No. 36 ("Lewis Decl.") ¶¶ 4-18; ECF No. 37 ("Jacobson Decl.") ¶¶ 5-8; Albis Decl. ¶¶ 8-13; Beynin Decl. ¶¶ 8-13, they focus on discovery with respect to individual claims without addressing the limits of the arbitral forum when it comes to allegations of systemic fraud.  As the Second Circuit and prior decisions in this District have concluded when analyzing "New York's arbitration process for no-fault coverage," the process provides for "an expedited, simplified affair" in which "[d]iscovery is limited or non-existent."  *Allstate Ins. Co. v. Mun*, 751 F.3d 94, 99 (2d Cir. 2014) (citing N.Y. Comp. Codes R. & Regs. tit. 11, § 65-4.5).  In brief, the process is "meant to work as quickly and efficiently as possible," and, critically, "[c]omplex fraud and RICO claims, maturing years after the initial claimants were fully reimbursed, cannot be shoehorned into this system."  *Id.*; *accord Advanced Comprehensive Lab'y, LLC*, 2020 WL

7042648, at *2; *Mayzenberg*, 2018 WL 6031156, at *6.  Accordingly, the Court agrees with

Plaintiffs that the claims brought in this action cannot be meaningfully pursued in no-fault

insurance proceedings.  *See Parisien*, 352 F. Supp. 3d at 229 ("Because it is only through this

tapestry of facts that the alleged fraud comes into focus, State Farm may not as a practical matter

have a fair opportunity to present its claims unless it is permitted to direct the trier of fact to *all*

of the claims at issue." (emphasis in original)); *see also Mayzenberg*, 2018 WL 6031156, at *4

(noting that "the Court has a strong interest in judicial economy" in this context).

For substantially similar reasons, the harms Plaintiffs assert are imminent, concrete, and

continuing.  "For purposes of preliminary injunctions . . .  [t]he harm must be so imminent as to

be irreparable if a court waits until the end of trial to resolve the harm."  *Rodriguez ex rel.*

*Rodriguez v. DeBuono*, 175 F.3d 227, 235 (2d Cir. 1999).  Here, hundreds of arbitration

proceedings are pending.  It stands to reason that many of these expedited proceedings will have

concluded by the end of trial absent injunctive relief, and allowing hundreds of arbitrations to be

"heard by a mix of arbitrators, each of whom will likely come to their own independent and

contradictory conclusions that may be rendered ineffective by this Court, will result in harm to

GEICO from which it cannot recover."  *Mayzenberg*, 2018 WL 6031156, at *5.[3]

### B.     Plaintiffs Have Demonstrated a Serious Question Going to the Merits

"The 'serious questions' standard permits a district court to grant a preliminary injunction

in situations where it cannot determine with certainty that the moving party is more likely than

---

[3]  Contrary to Defendants' assertion that GEICO's harm is not imminent because "[GEICO]
failed to take any remedial action for 3 years," Defs.' Mem. at 15, Plaintiffs brought the instant
Motion shortly after filing a Complaint in which they alleged that "GEICO did not discover
and could not reasonably have discovered that its damages were attributable to fraud until
shortly before it filed th[e] Complaint [in this action]," FAC ¶ 336; *see also, e.g., id.* ¶¶ 325-31
(alleging Defendants' efforts to conceal the alleged scheme from GEICO).

not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Glob. Mkts., Inc.*, 598 F.3d at 35 (citation omitted).  The value of an approach encompassing the serious questions standard "lies in its flexibility in the face of varying factual scenarios and the greater uncertainties inherent at the outset of particularly complex litigation." *Id.*

Here, the Court finds that Plaintiffs have raised a "serious question" going to the merits. Plaintiffs' Amended Complaint "detail[s] a complicated scheme of alleged fraudulent activity." *Elzanaty*, 929 F. Supp. 2d at 222; *see* Pls.' Mem. at 3-5 & n.1, 14-15 (summarizing Defendants' alleged fraudulent scheme); Pls.' Reply Mem. at 3-5 (same).  Plaintiffs' allegations, when "analyz[ed] . . . as a whole," give rise to an "inference . . . that the treatments [we]re [either] not being provided on the basis of medical necessity," *Parisien*, 352 F. Supp. 3d at 229, were not provided at all, or were not provided in compliance with applicable state laws and regulations. *See id.*  For example, Plaintiffs allege the following patient-, date-, and location-specific "representative" examples of fraudulent conduct: 15 instances of "Advanced Spinal Care, Spine Care of NJ, Albis, Beynin, and Detullio . . . issu[ing] substantially identical 'diagnoses', on the same date, to more than one [individual] involved in a single accident, and recommend[ing] a substantially identical course of medically unnecessary 'treatment' to the [individuals]," FAC ¶¶ 143-45; 25 instances of Spine Care of NJ submitting personal injury protection benefits in New York even though it was ineligible to do so, *id.* ¶¶ 155-58; nine instances of "Defendants . . . provid[ing] a substantially identical course [of medically unnecessary treatment] to two or more [individuals] who were involved in the same minor accident," *id.* ¶¶ 182-83; and 20 instances of Beynin, Albis, Jacobson, Spine Care of NJ, and Advanced Spinal billing for treatment related to injuries the treated individuals allegedly did not have, *id.* ¶¶ 195-98.  Additionally, Plaintiffs

14

appended to the Amended Complaint three charts containing what are alleged to be thousands of "fraudulent claims . . . that the Defendants submitted, or caused to be submitted, to GEICO;" those charts include claim numbers, approximate billing dates, CPT codes, charges, and the name of the provider.  FAC ¶ 6, Exs. 1-3.  These allegations, among others, "raise a serious question going to the merits of whether defendants were [providing] medically necessary treatments," *Wellmart RX, Inc.*, 435 F. Supp. 3d at 454-55, were providing treatments in compliance with applicable rules and regulations, and/or were billing for treatments that never occurred.

Defendants' arguments to the contrary are unavailing.  As a preliminary matter, the Court rejects Defendants' contention that Plaintiffs have failed to carry their evidentiary burden.  *See* Defs.' Mem. at 5-6, 18-20.  "[A] complaint alone can be sufficient to grant an injunction, [and] [t]his is particularly true where . . . the complaint comprehensively details regulatory violations, unnecessary medical services, and unlawful referrals."  *Moshe*, 2020 WL 3503176, at *2 (collecting cases); *see also Cean*, 2019 WL 6253804, at *5 (finding a serious question going to the merits where plaintiffs "alleged, in significant detail, facts relating to Defendants' fraudulent activity in its Complaint, describing fraudulent medical treatment, deceitful billing protocols, and an illegal kickback and referral scheme"); *Parisien*, 352 F. Supp. 3d at 234 (E.D.N.Y. 2018) (holding that, in light of plaintiffs' allegations and exhibits, it could not be said that plaintiffs' request for relief "rest[ed] on mere hypotheticals" (quoting *Hancock v. Essential Res., Inc.*, 792 F. Supp. 924, 928 (S.D.N.Y. 1992))).

Although Defendants respond to some of Plaintiffs' allegations, Defendants responses "do[] not negate the serious questions raised by the pleadings because [they largely] speak[] in generalities and do[] not dispute the patient-by-patient examples" noted above.  *Gov't Emps. Ins.*

*Co. v. Strut*, No. 19-CV-728, 2020 WL 1820500, at *2 (W.D.N.Y. Apr. 10, 2020), *appeal docketed*, No. 20-1231 (2d Cir. Apr. 4, 2020).  Defendants aver that they complied with the relevant laws and regulations and did not do what Plaintiffs allege.  *See, e.g.*, Beynin Decl. ¶¶ 5, 8, 20, 22, 26-30, 33-36, 37-42, 44-46.  However, Defendants do not address Plaintiffs' patient-, date-, and location-specific allegations with any particularity, and simply noting that Defendants have prevailed on certain prior challenges with respect to unspecified procedures, Defs.' Mem. at 6-7, does not plug these holes.  For example, Defendants do not explain why – or contest that – multiple individuals in the same accident received identical treatment plans and diagnoses on the same day.  *See, e.g.*, FAC ¶¶ 143-44; Pls.' Mem. at 4 n.1; *see also* FAC ¶ 183.  Nor do Defendants address Plaintiffs' assertions regarding improper billing in New York.  *See* FAC ¶¶ 155-57; Pls.' Reply Mem. 5 n.2.  Similarly, although Defendants contend that their physical examinations were extensive and resulted in the creation of a "narrative report and evaluation," they do not respond to Plaintiffs' specific assertions regarding Defendants' failure to "document findings" in the context of physical examinations.  *Compare, e.g.*, FAC ¶¶ 104-17, *with, e.g.*, Beynin Decl. ¶¶ 31-36.[4]

Several of Defendants' broad-brush responses also sidestep the substance of Plaintiffs' specific allegations.  For example, Plaintiffs allege that "in virtually every case in which Beynin, Albis, Jacobson, Spine Care of NJ, and Advanced Spinal purported to subject an [individual] to MUA, the treatment notes from other healthcare providers who treated the [individuals] indicated that the [individuals'] conditions were improving through more conservative

---

[4] Defendants also dispute that, for example, they have employed independent contractors and violated the Codey Law, N.J. Stat. Ann. §§ 45:9-22.5.  *See, e.g.*, Defs.' Mem. at 7-8, 10.  The Court need not herein reach these issues given the extent to which Plaintiffs' detailed allegations remain substantially unrebutted and give rise to a serious question going to the merits.

treatments." FAC ¶ 178; *see also id.* ¶ 183 (providing specific examples); *see also, e.g.*, *id.* ¶¶ 90, 112, 125-26, 130, 140-41, 144, 274 (noting that many of the individuals were involved in minor accidents). Defendants seemingly respond to this assertion by claiming that their treatments were proper because patients are generally referred to Defendants due to the "specialized nature of [their] practice[s]" and that the typical patient recommended to Defendants had "already . . . undergo[ne] lengthy conservative treatment for a minimum of four weeks, and in many cases, much longer, with little or no success." *See, e.g.*, Beynin Decl. ¶¶ 23-28, 32. However, this essentially ignores Plaintiffs' claim. It may be that Defendants' typical patient necessitates specialized treatment after more conservative approaches fail, but Defendants' response does not address why patients whose conditions were *improving* – an assertion that Defendants do not dispute – were nonetheless subjected to specialized treatment. Along similar lines, Defendants assert that they have "detail[ed] how each patient treatment is not predetermined and is based upon a review and consideration of each individual patient and their condition." Defs.' Mem. at 6. However, Plaintiffs do not allege that Defendants lacked procedures for patients. Rather, Plaintiffs claim that the ostensibly legitimate steps Defendants undertook provided a veneer of legitimacy to otherwise fraudulent conduct. *See, e.g.*, FAC ¶ 93 ("Each step in the Defendants' fraudulent treatment protocol was designed to falsely reinforce the rationale for the previous step and provide a false justification for the subsequent step, and thereby permit the Defendants to generate and falsely justify the maximum amount of fraudulent no-fault billing for each Insured."), ¶¶ 248-50 (noting that none of Defendant "Albis and Axis Chiro's purported V-NCT reports contained . . . interpretation of the data that Albis and Axis Chiro purported to obtain from the tests" other than "identical 'Diagnostic Summary'

sections").[5]  Defendants' responses leave a great number of Plaintiffs' specific assertions unrebutted.

Plaintiffs have carried their burden of demonstrating the existence of a serious question going to the merits.

### C.   Plaintiffs Have Demonstrated that the Balance of Hardships Tips Decidedly in Their Favor

Because the serious question standard applies, "the moving party . . . must additionally establish that 'the balance of hardships tips *decidedly*' in its favor." *Citigroup Glob. Mkts., Inc.*, 598 F.3d at 35 (emphasis in original) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)).  Plaintiffs have done so.

Plaintiffs assert that the balance of hardships tips decidedly in their favor because they will suffer irreparable harm and Defendants will suffer no appreciable hardship.  Plaintiffs argue that Defendants will in fact obtain a "high rate of statutory interest on their no-fault claims if they prevail[]" and will benefit from the "efficien[cy]" of having "the question of the[ir] . . . entitlement to no-fault insurance benefits resolved in a single action."  Pls.' Mem. at 15 (collecting cases); Pls.' Reply Mem. at 10 (same).

Defendants press several arguments in response.  Stripped of those arguments already rejected above, Defendants' remaining contentions are that a single proceeding is, in fact, inefficient, and that Defendants will suffer "considerable financial hardship if the No Fault

---

[5] Defendants' contention that their protocols are not predetermined because only a subset of patients receive MUAs is somewhat undermined by the proffered fact that all three "independent and unrelated" medical practice groups, Defs.' Mem. at 16, apparently provide MUAs to "approximately" twenty percent of the patients they examine, Beynin Decl. ¶ 27; Albis Decl. ¶ 27.  The Court need not, however, rely on this proffered fact to conclude that Plaintiffs have carried their burden in demonstrating the existence of a serious question going to the merits.

Arbitrations are enjoined" given the "approximately many bills in the pipeline totaling a large a few million dollar." Defs.' Mem. at 16-17.

The Court agrees with Plaintiffs – and with prior decisions in this District – that consolidation promotes efficiency in cases like this. *See, e.g.*, *Cean*, 2019 WL 6253804, at *5; *Advanced Comprehensive Lab'y, LLC*, 2020 WL 7042648, at *8. Additionally, notwithstanding Defendants' claim that they will suffer financially, they have not specified the extent of that hardship – *e.g.*, how much of their income the outstanding and pending claims constitute. In any event, if the preliminary injunction is granted and GEICO fails to prove its claims, Defendants' recovery of the no-fault benefits to which they are entitled will, at worst, be delayed. *See Parisien*, 352 F. Supp. 3d at 234. "Furthermore, like defendants in other similar actions, here, [D]efendants 'will benefit from the stay if [they] ultimately prevail[ ] in this matter because [they] will be entitled to the collection of interest at a rate of two percent every month that the No-Fault payments are overdue.'" *Advanced Comprehensive Lab'y, LLC*, 2020 WL 7042648, at *8 (final three alterations in original) (quoting *Gov't Emps. Ins. Co. v. Strutsovskiy*, No. 12-CV-330, 2017 WL 4837584, at *8 (W.D.N.Y. Oct. 26, 2017)); *see also* N.Y. Comp. Codes R. & Regs. tit. 11, § 65-3.9(a).

## III. The Court's Authority to Enjoin

Having determined that Plaintiffs have met their burden for obtaining preliminary injunctive relief under Rule 65, the Court turns to Defendants' challenge to the Court's authority to enjoin the no fault-proceedings at issue.

Defendants argue that the requested injunction is barred by the Federal Arbitration Act, Defs.' Mem. at 12, and rely on *Anderson v. Belend*, 672 F.3d 113 (2d Cir. 2011), to challenge this Court's authority to enjoin the no-fault proceedings at issue. As Defendants concede,

however, *Anderson* did not specifically address this issue.  Defs.' Mem. at 12.  Moreover, a number of decisions from this District – all post-dating *Anderson* – have held that the Federal Arbitration Act does not bar a court from enjoining no-fault proceedings.  *See, e.g.*, *Mayzenberg*, 2018 WL 6031156, at *4 ("[T]he Court finds that it would frustrate the purposes of the Federal Arbitration Act and judicial economy if the Act is interpreted to preclude the Court from enjoining Defendants' No-Fault collection arbitrations.");* Parisien*, 352 F. Supp. 3d at 232-33; *Moshe*, 2020 WL 3503176, at *1 n.2; *Wellmart RX, Inc.*, 435 F. Supp. 3d at 456; *but see Gov't Emps. Ins. Co. v. Grand Med. Supply, Inc.*, No. 11-CV-5339, 2012 WL 2577577, at *2 (E.D.N.Y. July 4, 2012).

The Court is persuaded by the rationale in *Mayzenberg*, where the court noted, *inter alia*, that "New York law rather than the Federal Arbitration Act applie[s] because the part[ies'] 'right to arbitrate [is] a creation of state no-fault law' and the [defendants] 'presented no evidence that the [ ] insurance contracts bargained for the right to arbitrate affirmative fraud claims through their private agreements.'"  *Mayzenberg*, 2018 WL 6031156, at *3 (quoting *Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F. Supp. 2d 243, 263 (E.D.N.Y. 2012)) (last alteration in original).  Additionally, Defendants affirmatively state that their claims "are expressly subject to arbitration under New York's statutory No Fault Arbitration rules."  Defs.' Mem. at 12.

The Court finds that it has the authority to stay pending no-fault proceedings and exercises that authority here to the extent described below.

## IV.    Scope of the Injunction

"[D]istrict courts must take care to ensure that injunctive relief is not overbroad."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011).  Rather, it "should be

'narrowly tailored to fit specific legal violations.'" *Id.* (quoting *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 50 (2d Cir. 1996)).

Plaintiffs request that, pending disposition of this action, the Court (1) "stay[] all pending no-fault insurance collection arbitrations that have been commenced against" Plaintiffs "by or on behalf of Defendants;" (2) "enjoin[] all of the Defendants in this action, and anyone acting or purporting to act on their behalf, from commencing any further no-fault insurance collection arbitrations or litigation against [Plaintiffs];" and (3) "enjoin[] . . . AAA . . . and any other . . . arbitral forum from accepting the filing of any arbitration demand by or on behalf of the Defendants seeking payment from [Plaintiffs], or issuing any awards involving arbitration between the Defendants and [Plaintiffs]." Pls.' Mem. at 1.

Defendants contend that the first two requests are overbroad. The crux of their contention is that: (1) Plaintiffs seek to enjoin claims by Defendants beyond those against Plaintiffs, and (2) Plaintiffs seek to enjoin claims that are not at issue in this action. *See* Defs.' Mem. at 20. The Court does not read Plaintiffs' requests as encompassing claims by Defendants other than those against Plaintiffs. *See, e.g.*, ECF No. 27 at 1 (". . . commenced against GEICO by or on behalf of Defendants . . . ;" "enjoining all Defendants . . . and anyone acting or purporting to act on their behalf, from commencing . . . arbitrations or litigations against GEICO . . ."). Accordingly, the Court finds no merit to Defendants' first objection.

As to the second objection, the Court agrees in part with Defendants. Plaintiffs' requests are overbroad to the extent they cover no-fault claims for procedures other than those identified in the Amended Complaint as fraudulently performed or non-reimbursable. Accordingly, the Court limits the injunction so as to cover no-fault insurance claims initiated by or on behalf of Defendants arising out of the CPT codes noted in Exhibits 1, 2, and 3 to the Amended Complaint

and supported by the allegations in the Amended Complaint: 99203, 99204, 22505, 27275, 27194, 27198, 97750, 95851, 99358, 95831, 95904, 95999.  Claims arising out of CPT codes identified in Exhibits 1, 2, and 3 but not supported by allegations in the Amended Complaint – *e.g.*, 23700 and 95833 – and claims arising out of CPT codes not otherwise detailed in either the Amended Complaint or its Exhibits are not stayed, and Defendants may, as appropriate, file claims premised on CPT codes 23700 and 95833 along with other, non-covered CPT codes.  If, however, claims premised on CPT codes 23700, 95833, or other non-covered CPT codes necessarily involve the CPT codes subject to the injunction, they, too, are subject to the stay, and Defendants are enjoined from filing such claims as well.

## V.      Undertaking

Pursuant to Rule 65(c), a "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  However, "an exception to the bond requirement has been crafted for cases involving the enforcement of 'public interests' arising out of 'comprehensive federal health and welfare statutes.'"  *Advanced Comprehensive Lab'y, LLC*, 2020 WL 7042648, at *8 (quoting *Pharm. Soc. of State of N.Y., Inc. v. N.Y. State Dept. of Soc. Servs.*, 50 F.3d 1168, 1174 (2d Cir. 1995)).  Further, "courts have 'wide discretion to dispense with the bond requirement' when 'there has been no proof of likelihood of harm.'"  *Moshe*, 2020 WL 3503176, at *3 (quoting *Donohue v. Mangano*, 886 F. Supp. 2d 126, 163 (E.D.N.Y. 2012)).

The Court agrees with prior decisions that have concluded that New York's no-fault insurance scheme falls within the public interest exception and that preventing fraud of the sort alleged here is in the public interest.  *See, e.g.*, *Wellmart RX, Inc.*, 435 F. Supp. 3d at 456.

Moreover, Defendants' proof of harm is wanting; indeed, as set forth above, Defendants may well benefit from consolidation and interest. *See Cean*, 2019 WL 6253804, at *5 ("[G]ranting the stay and injunction will actually save all parties time and resources."); *Elzanaty*, 929 F. Supp. 2d at 222. Accordingly, the Court will not require Plaintiffs to give security pursuant to Rule 65.[6]

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion is GRANTED IN PART and DENIED IN PART as follows:

All pending no-fault claims between Plaintiffs and Defendants arising out of or involving CPT codes 99203, 99204, 22505, 27275, 27194, 27198, 97750, 95851, 99358, 95831, 95904, or 95999 are stayed until resolution of this action.

Neither Defendants nor anyone acting on their behalf may commence arbitration proceedings arising out of or involving CPT codes 99203, 99204, 22505, 27275, 27194, 27198, 97750, 95851, 99358, 95831, 95904, or 95999 until this action is resolved.

Neither the American Arbitration Association nor any other arbitral forum may accept the filing of any arbitration demand by Defendants seeking payment from GEICO, or issue any awards involving Defendants and GEICO, arising out of or involving CPT codes 99203, 99204, 22505, 27275, 27194, 27198, 97750, 95851, 99358, 95831, 95904, or 95999 until this action is

---

[6] Defendants also note that GEICO "is a large mega-company." Defs.' Mem. at 17. As such, "GEICO undoubtedly has the ability to pay if [D]efendants prevail," *Moshe*, 2020 WL 3503176, at *4, and Defendants do not appear to contend otherwise.

23

resolved.

SO ORDERED.

/s/ Diane Gujarati
DIANE GUJARATI
United States District Judge

Dated:  March 25, 2021
      Brooklyn, New York